**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MICHAEL GRANT on Behalf of Himself** | § | |
| **and on Behalf of All Others Similarly** | § | |
| **Situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 4:23-cv-290** |
| **v.** | § | |
| | § | |
| **VES GROUP, INC. and MAXIMUS,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendants.** | | |

## <u>UNOPPOSED MOTION TO APPROVE SETTLEMENT</u>

Plaintiff Michael Grant ("Grant," the "Named Plaintiff," or "Plaintiff") and Defendants VES Group, Inc. ("VES") and Maximus Inc. ("Maximus") (together, "Defendants") have entered into a Settlement Agreement and Release ("Settlement") to resolve this collective and class action lawsuit brought under the Fair Labor Standards Act ("FLSA") and state law on behalf of the Named Plaintiff and other individuals who were or are employed by VES and/or Maximus during the Statue of Limitations Period. The Parties agree that the terms of the Settlement represent a fair, adequate, and reasonable compromise of the claims at issue in light of the existence of disputed issues of fact, disputed issues of law with respect to liability, uncertainty as to whether Named Plaintiff would be deemed similarly situated to the putative class and collective members, uncertainty as to whether Named Plaintiff would obtain a judgment in favor of himself and the potential class/collective, and the risk of possible appeals.

Plaintiff hereby submits this Unopposed Motion for Preliminary Approval of their Settlement, Class Certification, and Appointment of Class Counsel and Proposed Order

Scheduling a Fairness Hearing and Directing Notice. Plaintiff brings this Motion pursuant to Rule

23 of the Federal Rules of Civil Procedure ("Rule 23") and seeks an order:

1. Granting preliminary approval of the Parties' Settlement;

2. Certifying the class, for settlement purposes only, pursuant to Rule 23(b)(3);

3. Appointing Plaintiff's counsel as Class Counsel pursuant to Rule 23(g);

4. Approving the CPT Group as Settlement Administrator to administer the Settlement;

5. Approving the proposed Settlement Notice and directing Class Counsel to distribute the approved Settlement Notice to class members within 14 days after Court's preliminary approval order, or as soon as administratively practicable thereafter; and

6. Scheduling a hearing on the fairness of the proposed settlement and setting a deadline for individuals to opt-out from or submit objections to the settlement that is 60 days from the date of distribution of the Settlement Notice; and

7. Retaining jurisdiction to administer and enforce the terms of the Settlement until the conclusion of the settlement administration process.

## **<u>INTRODUCTION</u>**

### **A. Relevant Procedural and Factual History**

On May 6, 2022, Named Plaintiff filed a collective action lawsuit against VES Group, Inc.

and Maximus, Inc. (collectively "Defendants") captioned *Grant v. VES Group, Inc., et al.*, Case

No. 4:22-cv-1465 (S.D. Tex.), in which Plaintiff sought to represent a collective action of non-

exempt employees who were paid hourly by Defendants and received bonus payments.  During

the time the first lawsuit was pending, eighty-nine individuals ("Opt-in Plaintiffs") opted-in to the

case by filing their notices of consent to join pursuant to 29 U.S.C. § 216(b).

The gravamen of Plaintiff's claims as alleged in the original complaint concerned the

manner in which Defendants calculated overtime.  Plaintiff was a quality analyst for Defendants.

As alleged in Plaintiff's original complaint, a quality analyst is responsible for reviewing medical

reports and benefit questionnaires to ensure that those reports and questionnaires comply with the

requirements of the Veterans Administration to assist veterans in obtaining their benefits. Defendants pay their quality analysts on an hourly basis and pay their quality analysts overtime when they work more than forty hours in a week.  Plaintiff alleged that, in addition to hourly wages, Defendants also pay their quality analysts and other non-exempt employees a series of bonus payments that, until the beginning of 2022, Defendants failed to include in the regular rate when calculating overtime.  Plaintiff alleged that these bonus payments were non-discretionary in nature, such that they should have been included in the overtime calculation.

Shortly after effectuating service of the original complaint, Plaintiff and Defendants agreed to attempt to engage in private mediation to pursue a global resolution of Plaintiff's claims on a class basis.  Because of the time required to gather and review the necessary records for nearly two-thousand potential class members, the Parties entered into a tolling agreement pursuant to which Plaintiff agreed to voluntarily dismiss his lawsuit without prejudice and the Parties agreed to toll the statute of limitations from July 17, 2022 through the date of termination of the tolling agreement for any claims set forth in the original complaint that Plaintiff, the Opt-in Plaintiffs, or putative collective members who ultimately were to join any case subsequently filed by Plaintiff or any Opt-in Plaintiff may have later asserted.  The Parties thereafter engaged in intensive fact investigation and informal discovery, providing information related to the claims and defenses as well as data to perform calculations of potential damages.

On November 18, 2022, the Parties attended mediation with Michael E. Dickstein, a nationally-renowned class action mediator.  After concluding a full day of good faith, arm's length negotiations, the Parties reached an agreement in principle to resolve all disputed claims and memorialized the material terms of the Settlement in a memorandum of understanding.  The Parties subsequently negotiated and drafted the comprehensive formal settlement agreement, a copy of

which is attached hereto as Exhibit A, fully and finally resolving the Fair Labor Standards Act ("FLSA") claims and related state law claims on a class-wide basis.  Plaintiff has filed a Complaint with this Court to commence this action ("Action") for the sole purpose of obtaining this Court's approval of the Settlement and to effectuate the Settlement for a full and final resolution of all disputed claims, including the release and dismissal of all such claims with prejudice, as requested in this motion.

Based upon the investigation of proposed Class Counsel, the informal discovery that occurred, the size of the potential class, and taking into account the contested factual and legal issues involved, the expense and time necessary to prosecute the Action through formal discovery, class-certification proceedings, and trial as well as the risks and costs of further prosecution of the Action, the uncertainties of complex litigation, and the benefits to be received pursuant to this Agreement, Plaintiff and Class Counsel have concluded that a settlement with Defendants on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of Plaintiff and the putative class. As such, Plaintiff and Class Counsel have agreed to settle this Action with Defendant on the terms set forth in the Parties' Settlement Agreement.

Notwithstanding their willingness to enter into the Settlement Agreement, Defendants have denied and continue to deny all of the claims asserted by Plaintiff and make no admission whatsoever of liability under or violation of the FLSA and similar state wage laws, or other applicable law. Defendants also deny that Plaintiff would be able to conditionally certify a collective or class action.  Nevertheless, for purposes of the Settlement only, Defendants consent to class certification, and reserve their right to assert that certification is not proper under Rule 23 or Section 216(b) of the FLSA, should the Court decline to approve the Settlement or if the Settlement fails for any reason.  Defendants nevertheless desire to settle these claims on the terms

set forth in the Settlement Agreement for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation and for the purpose of putting to rest the controversies engendered by the Action.

The Parties have agreed to resolve this matter on a Rule 23 class-wide basis. Given the overlap between claims arising under the FLSA and the other state law claims, and the fact that the Rule 23 standard is arguably more demanding than the standard for certification of an opt-in collective under the FLSA, which is whether the members of the collective are "similarly situated," the FLSA and other state law claims are both being resolved together through this Settlement. As such, the Settlement class is defined as follows:

> All current and former non-exempt bonus eligible employees who worked for VES Group, Inc. and/or Maximus, Inc. anywhere in the United States at any time from May 5, 2019 through December 31, 2021 as identified in Exhibit A.

The Parties believe that the settlement reached in this matter represents a fair and reasonable compromise given the disputed matters at issue and the risks of continuing forward with litigation on the merits and on certification.

## B.  Terms of the Proposed Settlement

Pursuant to the Settlement Agreement, the Parties stipulate to a Rule 23(b)(3) Settlement Class consisting of those persons who meet the following class definition: All current and former non-exempt bonus eligible employees who worked for VES Group, Inc. and/or Maximus, Inc. anywhere in the United States at any time from May 5, 2019 through December 31, 2021. The proposed Settlement provides for the establishment of a common settlement fund, for the benefit of Named Plaintiff and all  Settlement Class Members who do not opt out of the Settlement in

exchange for a release and waiver of specified claims. The settlement fund will be distributed as follows:

- To Settlement Class Members who do not opt-out of the Settlement, a settlement payment pursuant to the allocation formula set forth in the Settlement agreement;

- To Named Plaintiff, a service award in the amount of $10,000, as consideration for a general release in addition to the standard wage and hour releases provided by Settlement Class Members; and

- To Class Counsel, 40% of the common settlement fund for attorneys' fees, including those in connection with securing this Settlement and implementing the Settlement, plus reimbursement of Class Counsel's reasonable costs and litigation expenses.

In exchange for the settlement payments under the Settlement Agreement, Plaintiff has agreed to dismiss the Action and all claims with prejudice. Further, in exchange for their respective settlement payments, Plaintiff and each and every Settlement Class Member who does not opt-out of the Settlement will knowingly and voluntarily waive and release Defendants and the Released Parties (as defined in the Settlement Agreement) from all known and unknown claims for unpaid wages, overtime, failure to properly calculate the regular rate or overtime rate, liquidated damages, penalties, and attorneys' fees and costs, any claims under the theory of *quantum meruit*, claims under any other state and/or local law, rule, or regulation related to the payment of wages, overtime, or any other benefits, and any derivative claims, for the full statute of limitations period relative to the state(s) in which the Settlement Class Member worked up through December 31, 2021. In addition, Settlement Class Members who endorse and negotiate/cash their settlement check(s) will also release their FLSA Claims.

## ARGUMENTS AND AUTHORITIES

### A. The Settlement Procedure for Class Actions

The Fifth Circuit holds that there is an "overriding public interest in favor of settlement" that has been recognized "[p]articularly in class action suits." *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir.1981) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004) (acknowledging the "strong judicial policy favoring the resolution of disputes through settlement" and affirming both class certification and settlement approval (internal citation and quotation marks omitted)). Further, "the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (internal citations omitted); *accord Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them…. As a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming.").

Where, as here, the Parties propose to resolve class litigation through a class-wide settlement, they must obtain the Court's approval. Fed. R. Civ. P. 23(e). Under Rule 23(e)(2), a court holds a hearing to consider whether a proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285 (5th Cir. 2017).

Approval of a Rule 23 class settlement involves a two-step process. First, counsel submits the proposed terms of the settlement, and the district court makes a preliminary fairness evaluation. *Smith v. Gurstel Chargo, PA*, No. 8:14CV183, 2014 WL 6453772, *3 (D. Neb. Nov. 17, 2014)

("In considering preliminary approval of a proposed settlement in a class action case, the court makes a preliminary evaluation of the fairness of the settlement, prior to notice."); *see* Manual For Complex Litigation (Fourth) § 21.632 (2004). "To determine whether approval on a preliminary basis is appropriate, a district court considers whether it will 'likely be able to: (1) approve the proposal under Rule 23(e)(2); and (2) certify the class for purposes of judgment on the proposal.'" *Fath v. Am. Honda Motor Co.*, 2019 WL 6799796, at *2 (D. Minn. Dec. 13, 2019) (quoting Rule 23(e)(1)).

If these two elements are satisfied, the Court will review the parties' proposed notice to ensure it satisfies the requirements set out in Rule 23(c)(2)(B) and direct that Rule 23(e) notice be given to the class members advising them of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the proposed settlement. *See id.* (*quoting Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019)); Manual for Complex Litigation (Fourth) § 21.633. The second step in the settlement-approval process takes place after notice has issued, when the Court holds a fairness hearing and determines whether to grant final approval of the parties' proposed classwide settlement. *See* Manual for Complex Litigation (Fourth) §§ 21.633 – 21.635.

Lastly, FLSA settlements that do not include analogous state law claims are not subject to the same two-step process as settlements under Rule 23. Nonetheless, courts have held that settlement of FLSA claims generally require court approval. "Before approving an FLSA settlement, the Court must ensure that the parties are not negotiating around the FLSA's requirements and that the settlement represents a fair and reasonable resolution of a bona fide dispute." *Thompson v. Spa City Steaks, Inc.*, 2019 WL 5653215 (W.D. Ark. Oct. 31, 2019) (discussing judicial approval of FLSA settlements and factors courts consider) (citing *Younger v.*

*Ctrs. For Youth & Families, Inc.*, 2017 WL 1652561, at *1 (E.D. Ark. Apr. 27, 2017)); *accord Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Accordingly, district courts may approve settlements resulting from contested litigation, and the Court should approve the settlement "after scrutinizing the settlement for fairness." *Id.*, 679 F.2d at 1353 (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

### B. Certifying the Settlement Class is Proper.

Before turning to preliminary approval of the Parties' proposed Settlement, the initial inquiry is class certification. A settlement class may be certified if all the requirements of Rule 23(a) are met and one of the requirements of Rule 23(b) is met. Fed. R. Civ. P. 23(a) & (b); Manual for Complex Litigation (Fourth) §21.132. District courts must determine whether class certification is proper, though courts need not assess manageability under Rule 23(b)(3)(D). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial. But other specifications of [Rule 23] … demand undiluted, even heightened, attention in the settlement context."). Here, the Parties have stipulated to class certification only for settlement purposes. Defendants do not waive, and expressly reserve, all arguments that certification is improper if the Settlement is not finally approved.

### 1. The Rule 23(a) requirements are satisfied.

To obtain certification of a class under Rule 23, the moving party must first prove that the proposed Settlement Class meets the requirements of Rule 23(a): numerosity, commonality,

typicality, and adequate representation. The Settlement Class here plainly meets these requirements.

Numerosity requires that the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts have accepted that classes of 100 or more members are sufficient to satisfy the numerosity requirement. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999); *TWL Corp. v. Chow* (5th Cir. 2013)). Here, there are over 1,900 members of the proposed Settlement Class, all of whom worked for Defendants in bonus eligible roles as non-exempt employees in the applicable time period. Given the size of this class, joinder is impracticable.

Commonality requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this requirement, the claims of the Class "must depend on a common contention …. That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The class proceeding will allow the court to resolve a discrete question of law whose determination "will resolve an issue that is central to the validity of each of the [individual plaintiff's] claims in one stroke." *Id.* Further, the "claims, defenses, relevant facts, and applicable substantive law" raised by the class claims, ensure that "dissimilarities within the proposed class" do not have the potential to impede the generation of common answers. *M.D. ex rel. Stukenberg v. Perry*, 82 Fed.R.Serv.3d 219, 675 F.3d 832 (5th Cir. 2012).

Here, there are common questions of law and fact which, if resolved, would be dispositive of issues for each of the Settlement Class Members in one stroke. The key questions are whether Defendants' alleged non-inclusion of bonus payments into the regular rate complied with the

FLSA and related state wage laws, and, if not, whether the Settlement Class Members were denied pay for any compensable overtime due to the policy. These questions are common to all the Settlement Class Members.

Typicality requires that "the claims and defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts liberally apply the typicality requirement when the representative claims come from the same event or based on the same legal theory as the class members' claims. *See Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002) ("[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

Here, the claims of the Named Plaintiff are typical of the claims of the Settlement Class Members. The claims arise from the same alleged conduct by Defendants and are all based on the same legal theories, *i.e.*, the alleged violation of the FLSA and related state wage laws, through the alleged common policy of paying bonuses but not including those bonus payments in the regular rate for all Settlement Class Members.

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). The Court must consider "[1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the

representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Id*., citing *Horton v. Goose Creek Indep. Sch. Dist*., 690 F.2d 470, 484 (5th Cir. 1982).

Here, while exact identity of interests is not required, Named Plaintiff's interests are aligned with those of the Settlement Class Members because the alleged bonus policy at issue in this case affected Plaintiff and the Settlement Class Members in the same way. Further, Named Plaintiff is an appropriate representative for the Settlement Class and is able to and will fairly and adequately protect the interests of the Settlement Class. Last, the attorneys for Plaintiff, who are proposed as appointed Class Counsel, are experienced and capable in FLSA and related state wage law class and collective action litigation and have successfully prosecuted numerous actions of a similar nature. [*See* Exhibit B, Declaration of Counsel]

### 2. Certification of a 23(b)(3) class is appropriate.

In addition to satisfying the requirements of Rule 23(a), the class must meet one of the subsections of Rule 23(b). Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3), which requires: (1) questions of law or fact common to the class members "predominate" over questions affecting individual class members; and (2) a showing the class action is a superior method of adjudication for the "fair and efficient adjudication of the controversy." *Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002) The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation, and the District Court must conduct a rigorous analysis of the requirement.

Here, common issues predominate over individualized issues for the proposed Settlement Class. Named Plaintiff alleges that Defendants implemented a payment practice and applied that practice to him and the proposed Settlement Class to allegedly deny them wages for all time

worked. The state laws that Plaintiff is suing on do not vary insofar as their protection for payments for all hours worked would defeat predominance. Each of the state laws that Plaintiff has sued upon have the minimal common and predominate element of requiring an agreement to work for a specified wage or alleged that the Defendants would be unjustly enriched by not properly paying overtime on the bonus payments.

While arguably there are individualized issues relating to the calculation of damages, the "more prevalent or important" issues regarding potential liability (whether Defendants' common payment practice resulted in Plaintiff and the Settlement Class Members not being paid the proper amount by way of excluding bonuses from the regular rate of pay for purposes of calculating overtime) are both common to the class and plainly do predominate, thus satisfying the Rule 23(b)(3) standard.

In addition to finding that common issues predominate, the Court must also determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As noted above, the fourth of the nonexhaustive factors in Rule 23(b)(3)—manageability—need not be considered when the Court is presented with a settlement class. Here, class treatment under Rule 23(b)(3) is the superior method of adjudicating the Settlement Class Members' claims because they are on average worth too little to be pursued individually given the cost and time involved in individual actions.

So if a settlement class were not certified, it is unlikely that any of the Settlement Class Members would be afforded relief. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

For the same reasons, each Settlement Class Member's interest in separately prosecuting his or her own individual case supports a finding of superiority. It would be uneconomical and inefficient for each Settlement Class Member to pursue his or her claims individually in more than 1900 individual lawsuits, each resulting in a relatively small recovery. If, however, any Settlement Class Member does not wish to participate in the Settlement, he or she may opt out of the proposed class and pursue his or her claims individually or not at all. *See* Fed. R. Civ. P. 23(c)(2)(B)(v) (for Rule 23(b)(3) classes, "notice must clearly and concisely state in plain, easily understood language … that the court will exclude from the class any member who requests exclusion"). For these reasons, the requirements of Rule 23(b)(3) are also met, and the class should be certified though only for settlement purposes.

Because certification under Rule 23(b)(3) is proper, the next issue is the approval the Parties' proposed Settlement.

**C. The Proposed Settlement Meets the Requirements for Preliminary Approval.**

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e). In analyzing whether to approve a class action settlement, courts review the parties' jointly submitted proposal to determine, preliminarily, if it is fair to the persons whose interests the court is required to protect and to provide notice and an opportunity to be heard to those affected by scheduling a fairness hearing. *See* Manual for Complex Litigation (Fourth) § 13.14.

To determine whether proposed class-action settlements are fair, adequate, and reasonable, Rule 23(e) provides a list of factors that district courts must consider when evaluating whether a proposed settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;

      (B) the proposal was negotiated at arm's length;

      (C) the relief provided for the class is adequate taking into account:

            (i) the costs, risks, and delay of trial and appeal;

            (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

            (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

            (iv) any agreement required to be identified under Rule 23(e)(3); and

      (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[1]  Rule 23(e) "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) adv. comm. notes.

      Here, the proposed settlement meets the above standards for preliminary Court approval. The Parties' dispute involves legitimate issues of fact concerning the terms and application of Defendants' alleged practice of not including bonus payments in the regular rate; the Parties exchanged detailed information and data regarding the facts, time entries, and potential damages; and the Parties, through their counsel, engaged in arms' length, good faith negotiations as to the terms of the Settlement. More specifically:

      (A) Plaintiff and proposed Class Counsel adequately represented the class in pursuing the claims on their behalf, investigating the facts underlying the claims, analyzing the merits and potential damages, and negotiating a fair resolution.

      (B) Proposed Class Counsel and counsel for Defendants negotiated the Settlement and the terms and conditions of the Settlement Agreement at

---

[1] Before Rule 23(e) was amended, different Circuit Courts had different lists of factors. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc*. (5th Cir. 2012) (The *Reed* factors are "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp*., 703 F.2d 170, 172 (5th Cir. 1983).).

arm's length, through extensive verbal and email communications, and in a mediation with an experienced nationwide FLSA class mediator.

(C) The relief negotiated for the Settlement Class is fair, reasonable, and adequate and fully considers the litigation risks and other factors referenced in Rule 23(e)(2)(C). As noted above, the costs of further litigation would dwarf any potential recovery and would present the risk of no recovery at all. If the Parties had been unable to reach an amicable resolution, the Action would have been heavily litigated between the Parties for over a year or more, and any disposition of the case at the District Court level would likely have gone to the Court of Appeals. Therefore, many years might pass before ultimate resolution.

(D) The Settlement Agreement provides for a reasonable process for providing Settlement Class Members with notice of the settlement (and the opportunity to opt-out or object) and to receive their settlement payments by mail.

(E) The Settlement Agreement provides for a reasonable attorney's fee and for payment of costs to compensate proposed Class Counsel for the risk, time and effort expended in representing the interests of Plaintiff and Settlement Class.

(F) On its face, the Settlement Agreement treats all Settlement Class Members equitably relative to each other in that each Settlement Class Member will receive a *pro rata* individual settlement amount based on the number of weeks they worked in which they received a bonus and worked overtime.

On these facts, the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the class.

### D. The Court Should Approve the Proposed Notice to the Class

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement] if giving notice is justified by the parties' showing" that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the [settlement] proposal." Fed. R. Civ. P. 23(e)(1). While Rule 23(e)(1) directs the Court to decide whether there are grounds to give notice of the settlement to the class, Rule 23(c)(2)(B) generally describes the requirements for

notice for (b)(3) classes. *Id.* 23(e)(2)(B). A settlement notice must also comply with due process requirements. Generally, notice need only be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Indeed, notice must only satisfy the broad 'reasonableness' standards imposed by due process. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. at 173-77, 94 S.Ct. at 2150-52; Advisory Committee Note, 39 F.R.D. 98, 105, 107 (1966); *Nissan Motor Corp. Antitrust Litigation, In re,* 552 F.2d 1088 (5th Cir. 1977). There is no requirement that the notice "provide a complete source of information" or an exact amount of recovery for each Settlement Class Member. *Id.* (*citing DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995)). So, for example, the Eighth Circuit has found that class notice which "provided a link to the settlement website, a description of the opt out procedure, and a toll free number to pose questions to the claims administrator" was adequate and that the notice was not defective because it did not adequately explain scope of liability releases. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1065 (8th Cir. 2013).

As set forth in detail above and as demonstrated in Exhibit C, the Parties' proposed Class Notice, modeled after notices recommended by the Federal Judicial Center, meets the requirements set forth in Fed. R. Civ. P. 23(e)(1) as it is "reasonable." Specifically, the Class Notice:

> • Informs the Settlement Class of the claims in this lawsuit;
>
> • Informs the Settlement Class of the Settlement Amount and how the Parties propose the amounts be allocated and distributed, including an estimate of the amount a given Settlement Class Member stands to receive;
>
> • Informs the Settlement Class of the consequences for not sending a signed opt-out request and the specific steps the individual must take if he or she wants to be excluded from the class;

• Explains that even if the individual does not exclude him or herself from the Settlement Class, he or she can file an objection, the process and potential consequences for which are described in the notice;

• Explains the consequences for a Settlement Class Member who does not "opt out" of the settlement; and

• Provides contact information for Class Counsel both by phone and email if there are questions relating to the Notice.

Given these undisputed facts, the proposed Class Notice and means of distribution of the Notice meets the standards set forth in Rule 23(e). The Parties therefore ask that the Court approve the notice and its distribution to class members via first-class U.S. mail within 14 days after entry of the Court's order preliminarily approving the settlement or as soon as administratively possible.

**E.  The Court Should Appoint Beatriz Sosa-Morris and John Neuman as Class Counsel**

Under Rule 23(g), district courts that certify a class must appoint Class Counsel. In doing so, courts must consider the following factors: (i) the work counsel has done in identifying or investigating the potential claims in the action; (ii) counsel's experience in handling class actions, other than complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Rule 23(g) also gives courts discretion to consider other pertinent matters and to enter orders necessary for appointment of counsel. *Id.*

The duty of Class Counsel is to "fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(4). Here, the Declarations of Beatriz Sosa-Morris and John Neuman show that Plaintiff's counsel has considerable experience in representing employees in employment matters, including in class and collective actions under the FLSA. They devoted significant effort to identifying, investigating, and prosecuting the claims in the Action, they drafted the Complaints

for both lawsuits, they worked with Defendants' counsel on obtaining information needed to assess the merits and potential damages in the case, and they negotiated the claims of the Settlement Class in this Action. As such, Plaintiffs' counsel has and will vigorously, fairly, and adequately represent the interests of the proposed class as required by Rule 23(g)(1) and (g)(4), and their appointment as Class Counsel is appropriate.

**1. The Court Should Approve the Attorneys' Fees and Costs**

*i.    Attorneys' Fees in Common Fund Cases*

Attorneys' fees are commonly awarded in both federal and state courts in recognition of the principle that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (observing that the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund [...] is entitled to a reasonable attorney's fee from the fund as a whole"). The common fund doctrine ensures payment for work performed by class counsel, avoiding the alternative of unjust enrichment of absent class members who benefit from the fund without an express retainer agreement. *Id.*

The Fifth Circuit has approved either a lodestar or a percentage of fund method when calculating attorney's fees in settled FLSA cases. *See Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) ("The Fifth Circuit has never reversed a district court judge's decision to use the percentage method, and none of our cases preclude its use."). "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden I Condominium Ass'n. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (citations and alterations

omitted).

ii.       *Method of Determining Attorney's Fees*

Common fund cases should be based on the percentage fee method. *In re Harrah's Entm't*, No. 95-3925, 1998 U.S. Dist. LEXIS 18774, at *7 (E.D. La. Nov. 24, 1998). The benefits of the percentage fee method are: (1) readily ascertainable fee amounts and (2) increased settlements. *Id.*[2] Plaintiff requests that the Court employ the common fund/percentage method, apply the established benchmark of 40 percentage, and affirm the benchmark with the application of the *Johnson* factors.

In the Fifth Circuit, district courts regularly use the percentage method of calculating a common fund class action settlement with attorneys' fees, with a *Johnson* reasonableness check." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012.); *See, e.g.*, *Klein v. O'Neal, Inc.*, Nos. 7:03–CV–102–D, 7:09–CV–94–D, 2010 WL 1435161, at *34 (N.D.Tex. Apr. 9, 2010) (collecting cases); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 751 (S.D.Tex.2008); *Turner v. Murphy Oil USA, Inc.,* 472 F.Supp.2d 830, 860 (E.D.La.2007) 472 F.Supp.2d at 860 (collecting cases); *Batchelder v. Kerr–McGee Corp.*, 246 F.Supp.2d 525, 531 (N.D.Miss. 2003).

The *Johnson* reasonableness check is a framework to evaluate the percentage method of settlement of fees from a common fund. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717, 720 (5th Cir.1974), *overruled on other grounds, Blanchard v. Bergeron,* 489 U.S. 87, (1989). The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the

---

[2] "By contrast, there are at least nine perceived deficiencies with the lodestar method, including: (1) increasing the workload of the judicial system; (2) lack of objectivity; (3) a sense of mathematical precision unwarranted in terms of the realities of the practice of law; (4) ease of manipulation by judges who prefer to calculate the fees in terms of percentages of the settlement fund; (5) encouraging duplicative and unjustified work; (6) discouraging early settlement; (7) not providing judges with enough flexibility to award or deter lawyers so that desirable objectives, such as early settlement, will be fostered; (8) providing relatively less monetary reward to the public interest bar; and (9) confusion and unpredictability in administration." *Id.* at 7-8.

issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

### iii.  *Plaintiff's Fee Request is Within the Circuit's Benchmark*

Plaintiff seeks attorney's fees at the rate of 40% of the gross settlement amount. This rate is typically approved in settled FLSA collective action cases in this Circuit and has been established as the benchmark. *Sarabia v. Spitzer Indus., Inc.*, No. 4:17-CV-02092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (Ellison, J.) ("The parties agreed on attorneys' fees that represent 40% of Defendant's total payment. This percentage is in line with that approved in other FLSA cases."); *Jasso v. HC Carriers, LLC*, No. 5:20-CV-212, 2022 U.S. Dist. LEXIS 207043, at *16-17 (S.D. Tex. Oct. 19, 2022) (In FLSA cases, an "**attorney's fee of 40% [is] a reasonable benchmark,** subject to possible upward or downward adjustment after application of the *Johnson* factors.") (emphasis added); *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-01056-RP, 2021 WL 2934896, at *3 (W.D. Tex. Jan. 25, 2021) (Pitman, J.) ("The settlement agreement requires that [the defendant] pay 40 percent of the total settlement amount to FLSA Plaintiffs' counsel to cover attorney's fees and costs, in addition to 'advanced litigation expenses.' […] This percentage is in line with [w]hat courts have approved in reviewing other FLSA settlements."); *Singer v. Wells Fargo Bank, N.A.*, No. 5:19-cv-00679-JKPESC, 2020 WL 10056302, at *2 (W.D. Tex. July 14, 2020) (Pulliam, J.) ("The Parties' agreement that Plaintiffs' counsel is entitled to a

total of forty percent of the gross settlement amount for fees and costs is also reasonable."); *Arnold v. West Mississippi Home Health Servs., Inc.*, No. 3:17-cv-00673-WHBLRA, 2018 WL 11275432, at *3-4 (S.D. Miss. May 29, 2018) (Barbour, J.) (approving settlement providing attorney's fees in the amount of forty-five percent of the gross settlement amount); *Lackey v. SDT Waste and Debris Services, LLC*, No. 16-0239, 2014 WL 4809535, at *3 (E.D. La. Sept. 26, 2014) (Whitehurst, M.J.) (approving forty percent contingency fee in FLSA settlement); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (affirming district court's finding that contingency fees for class funds have ranged from thirty-five to forty percent, and that thirty percent contingent fee "is on the low side" for labor litigation); *Sterling v. Greater Houston Transportation Company, et al.*, No. 4:20-cv-00910 (S.D. Tex. Apr. 19, 2022) (Rosenthal, J.) (approving 40% fee award to plaintiff's counsel in FLSA collective action).

Accordingly, Plaintiff requests that the Court approve the requested percentage fee of 40% because it is the benchmark in FLSA cases. The *Johnson* Factors discussed below support this request.

    iv.    ***The Johnson Factors Support the Fee Request***

        **a.  The Time and Labor Required**

Class Counsel has expended significant effort and resources to achieve an extraordinary result for the Settlement Class Members. Specifically, Class Counsel interviewed and/or communicated with the 89 Opt-ins who joined the first action before Plaintiff voluntarily dismissed it with prejudice to pursue settlement and uncovered and reviewed evidence prior to engaging in settlement negotiations. Many hours went into legal research and investigation of the claims made by Plaintiff. Class Counsel also reviewed hundreds of documents to assess the claims made and the defenses asserted. The Parties then engaged in a full day's mediation and negotiated a

memorandum of understanding containing material terms of the Settlement. In the weeks following the mediation, the Parties engaged in multiple rounds of negotiations to reach a formal, comprehensive Settlement Agreement.

Achieving this result for a class of over 1,900 individuals was no small task. Although the "hours claimed or spent on a case should not be the sole basis for determining a fee, they are a necessary ingredient to be considered." *Johnson* at 717. To date, Class Counsel has expended 725 hours in attorney and staff time in performing the aforementioned work on behalf of the Class. Class Counsel's billing summary is included in the attached declaration and supports a finding in favor of the fees requested. This is currently a multiplier of approximately four, which is within the customary fee for common fund cases.[3] In "contingency fee cases, this multiplier is necessary to reflect the possibility of no recovery." *In re Harrah's Entm't*, 1998 U.S. Dist. LEXIS 18774, at *15.

Moreover, the requested fees are not based solely on the time and effort already expended; they are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. Class Counsel expects to respond to class member inquiries after notice is

---

[3] *In re Enron Corp. Securities, Derivatives, and ERISA Litigation*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (approving a multiplier of 5.2); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1088 n. 52 (S.D. Tex. 2012) ("In our informal review of opinions evaluating a lodestar cross-check, the multipliers ranged from about 1.0 to over 5.0, with a substantial number of multipliers in the 3.0 to 4.0 range").

issued and after final approval, especially after checks are issued. *Id.* Here, this factor weighs into granting the fee requested.

### b. The Novelty and Difficulty of the Questions

Courts have consistently recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law … These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). While this case may not provide any novel questions of law, it nevertheless involved difficult and complex issues by virtue of being a hybrid class and collective action. "[C]ourts have recognized that a hybrid action which includes both an opt-out state law class and an opt-in FLSA class is complex." *Izzio v. Century Golf Partners Mgmt., L.P.*, No. 3:14-CV-03194-M, 2019 WL 10589568, at *9 (N.D. Tex. Feb. 13, 2019), *aff'd*, 787 F. App'x 242 (5th Cir. 2019). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

The present Action presents the same type of complexities as *Izzio*, where the court held "the issues resented in this action are complex and require a level of legal skill. This supports the finding that the requested fees are reasonable." *Izzio*, 2019 WL 10589568, at *9. Here, the central disputed issue was whether the exclusion of certain bonuses from the regular rate of pay for purposes of calculating overtime was proper. Defendants contended that the bonuses were solely discretionary and therefore properly excluded from the regular rate. Absent settlement, the Parties would have vigorously litigated the issue of what constitutes a "discretionary", as opposed to "non-discretionary," bonus. This which would have required protracted discovery relating to

24

Defendants' pay practices, bonus plans, and bonus payments, including ESI discovery, as well as depositions to obtain testimony regarding the discretionary or non-discretionary nature of the bonus payments—including testimony from Named Plaintiff, Opt-in Plaintiffs, and putative class members regarding their expectations, if any, with regard to earning bonuses. A challenge Plaintiff faced in this case was the running statute of limitations because Defendants changed their pay practices. Upon agreement to engage in private mediation, Class Counsel was able to obtain Defendants' consent to toll the statute of limitations pending settlement negotiations.

In short, this would have been a long and fact intensive case in which Class Members risked recovering $0 if Defendants' defenses were found to be meritorious, defeating Plaintiff's claims. "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful substantial settlement. A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1363-64. The second *Johnson* factor weighs in favor of approving the requested attorneys' fees.

### c.  The Skill Required to Perform the Legal Services Properly

Courts often review the second *Johnson* factor jointly with the third. In addition to the complexities presented by the hybrid nature of this lawsuit, the case presented a number of other legal and factual challenges. The parties spent substantial time debating the claims and defenses. Furthermore, highly experienced class action attorneys represented the Plaintiff and Defendants, respectively. "Despite formidable opposition, plaintiffs were able to work together as a team and overcome many obstacles and financial burdens in reaching a settlement. In addition, because of counsel's efforts, expensive and prolonged discovery was avoided in favor of an amicable resolution." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 328 (W.D. Tex. 2007). *See also*, *Garza v.*

*Sporting Goods Properties, Inc.*, 1996 WL 56247, at \*31 (W.D. Tex. Feb. 6, 1996) (recognizing exceptional skills requisite to perform legal services properly in complex class action).

Given the level of complexity in this matter as outlined above, the attorneys on both sides of the case were required to have an exceptional amount of skill and knowledge in wage and hour law in order to properly litigate the case on behalf of their clients. *See Walco Invs. v. Thenen*, 975 F.Supp. 1468,1472 (S.D. Fla. 1997) (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I,* 946 F.2d at 772 n. 3 (in assessing the quality of representation by Class Counsel, Court also should consider the quality of their opposing counsel.); *Johnson,* 488 F.2d at 718; *Ressler v. Jacobson,* 149 F.R.D. 651, 654 (M.D. Fla. 1992). "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested… In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant premium." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1363. So it should be here.

In obtaining the proposed Settlement, Class Counsel reviewed payroll and time entry data for hundreds of employees and prepared a comprehensive, complicated, and accurate damages model. Moreover, Plaintiff interviewed numerous witnesses and performed legal research into Defendants' defenses under state and federal law. Class Counsel has considerable skill and experience given the 10+ years of litigating and negotiating these types of federal and state law hybrid wage claims. Accordingly, this factor weighs in favor of approving the requested fee.

### d.  The Preclusion of Other Employment

In this case, Class Counsel are a small law firm. The involvement of Class Counsel in this case has diminished, and perhaps in some cases foreclosed, the acceptance of other employment

or possible business opportunities. *See DeHoyos*, at 328 (holding "[b]ased on the number of hours expended by counsel, their support staffs, and the experts, no doubt remains that cases were not accepted because of this ongoing litigation, especially cases which demanded immediate attention.). This forth *Johnson* factor supports the reasonableness of the fee request.

### e. The Customary Fee

The fee sought in this case is customary and consistent with other percentage fee awards in this Circuit and this Court. As mentioned above, 40% is the benchmark and a multiplier of approximately four of the lodestar is within the range of multipliers in common fund cases especially in light of the results obtained herein.[4] In FLSA cases, an "**attorney's fee of 40% [is] a reasonable benchmark,** subject to possible upward or downward adjustment after application of the *Johnson* factors." *Jasso v. HC Carriers, LLC*, No. 5:20-CV-212, 2022 U.S. Dist. LEXIS 207043, at *16-17 (S.D. Tex. Oct. 19, 2022) (emphasis added). Accordingly, this fifth *Johnson* factor also weighs in favor of the requested attorneys' fees.

---

[4] *See*, *Sarabia v. Spitzer Indus., Inc.*, No. 4:17-CV-02092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (Ellison, J.) ("The parties agreed on attorneys' fees that represent 40% of Defendant's total payment. This percentage is in line with that approved in other FLSA cases."); *Blackburn v. Conduent Com. Sols. LLC*, 2020 WL 9810023, at *3 (W.D. Tex. Dec. 22, 2020) (awarding 40% of common fund in FLSA case). Many district courts in the Fifth Circuit have approved attorney's fees amounting to 40% or more of the settlement amount in FLSA cases. *See, e.g.*, *Singer v. Wells Fargo Bank, N.A.*, No. 5:19-CV-00679, 2020 U.S. Dist. LEXIS 256111, 2020 WL 10056302 at *2 (W.D. Tex. July 14, 2020); *Sarabia* 2018 WL 6046327 at *4 (collecting cases); *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-01056-RP, 2021 WL 2934896, at *3 (W.D. Tex. Jan. 25, 2021) (Pitman, J.) ("The settlement agreement requires that [the defendant] pay 40 percent of the total settlement amount to FLSA Plaintiffs' counsel to cover attorney's fees and costs, in addition to 'advanced litigation expenses.' […] This percentage is in line with [w]hat courts have approved in reviewing other FLSA settlements."); *Arnold v. West Mississippi Home Health Servs., Inc.*, No. 3:17-cv-00673-WHBLRA, 2018 WL 11275432, at *3-4 (S.D. Miss. May 29, 2018) (Barbour, J.) (approving settlement providing attorney's fees in the amount of forty-five percent of the gross settlement amount); *Lackey v. SDT Waste and Debris Services, LLC*, No. 16-0239, 2014 WL 4809535, at *3 (E.D. La. Sept. 26, 2014) (Whitehurst, M.J.) (approving forty percent contingency fee in FLSA settlement); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (affirming district court's finding that contingency fees for class funds have ranged from thirty-five to forty percent, and that thirty percent contingent fee "is on the low side" for labor litigation); *Sterling v. Greater Houston Transportation Company, et al*., No. 4:20-cv-00910 (S.D. Tex. Apr. 19, 2022) (Rosenthal, J.) (approving 40% fee award to plaintiff's counsel in FLSA collective action).

### f.   Whether the Fee is Fixed or Contingent

This case was taken on a purely contingency fee basis. In undertaking to prosecute this complex action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment. "The contingency fee system 'permits a greater recovery for successful cases, thereby rewarding their investment in successes, and offsetting the losses from unsuccessful cases.'" *DeHoyos*, at 329, *quoting In re Shell Oil Refinery*, 155 F.R.D. 552, 571 (E.D.La.1993). Adjustment of the lodestar to reflect the contingent nature of the suit was recognized by the United States Court of Appeals for the Fifth Circuit in *Graves v. Barnes*, 700 F.2d 220, 222–23 (5th Cir. 1983). Similarly, the Seventh Circuit also recognizes this principle. *See*, *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) (holding "when attorneys' receipt of payment is contingent on the success of the litigation, reasonable compensation may demand more than the hourly rate multiplied by the hours worked, for that is exactly what the attorneys would have earned from clients who agreed to pay for services regardless of success. Thus to account for the contingent nature of the compensation, a court should assess the riskiness of litigation.").

Furthermore, "[a] risk multiplier is not merely available in a common fund case but can be mandated if the court finds that counsel had no sure source of compensation." *In re Combustion, Inc*., 968 F. Supp. 1116,1133 (W.D. La. 1997).  Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F.Supp.2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D.Fla.1988), aff'd, 899 F.2d 21 (11th Cir.1990)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir.1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656 ("Numerous

cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F.Supp. 755, 759 (N.D.Ga.1985), *modified,* 803 F.2d 1135 (11th Cir.); *York v. Alabama State Bd. Of Education*, 631 F.Supp. 78, 86 (M.D.Ala.1986).

As one court observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer…. A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens v. Wometco Enterprises, Inc*., 118 F.R.D. 548 (S.D. Fla. 1988)

In this case, Class Counsel assumed all of the risk in pursuing this case, and coupled with the requirement that Class Counsel advance thousands of dollars in litigation expenses, there was no guarantee of any recovery. As such, this factor supports the reasonableness of the fee request.

### g.  The Time Limitations Imposed

"Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson*, at *718. This factor is not applicable to the present case and weighs neither for nor against an upward or downward adjustment from the benchmark of 40%.

### h.  The Amount Involved and Results Obtained

The amount in controversy involved and results obtained strongly support approval of Class Counsel's requested fees. Named Plaintiff and Settlement Class Members will receive a sizeable recovery with this Settlement.  In the present case, Class Counsel has obtained a gross settlement that accounts for approximately 141% of the maximum damages the Class could obtain

if they were successful during a two-year statute of limitations without accounting for liquidated damages. The Settlement Agreement is an outstanding result for all the Settlement Class Members and was obtained quickly and efficiently. Not a single class member had to be subject to written discovery, depositions, or cross-examination at trial, yet they can reap the benefit of recovering 85% of their alleged back wages *in their pocket* (after accounting for attorney's fees and expenses). *See Jasso*, No. 5:20-CV-212, 2022 U.S. Dist. LEXIS 207043, at *19 (finding that class members receiving 85% of their calculated back pay supports the agreed upon award of attorney's fees); *Cabezas v. Bravura Info. Tech. Sys.*, No. 7:19-CV-00027, 2019 U.S. Dist. LEXIS 244179, at *8 (S.D. Tex. Dec. 11, 2019) (finding a 44% recovery was satisfactory). The eighth *Johnson* factor supports Class Counsel's fee request under the Settlement Agreement.

### i.   The Experience, Reputation, and Ability of the Attorneys

The attached declaration of Class Counsel demonstrates that experienced counsel represented the Class throughout this litigation. Class Counsel has represented employees in FLSA and wage related matters for over 10 years. Class Counsel have previously been approved as Class Counsel in other FLSA collective and wage-related Rule 23 class actions. Moreover, Class Counsel have successfully prosecuted FLSA cases, argued FLSA issues before the Fifth Circuit, pursued FLSA cases in arbitration and wage claims with the NLRB. The experience, reputation, and ability of Class Counsel supports approval of Class Counsel's fee petition.

### j.   The Undesirability of the Case

Courts have recognized the undesirability of a case is another important factor in determining a fair fee award. *See Alberti v. Klevenhagen*, 903 F.2d 352, 352 (5th Cir.1990) (affirming district court's undesirability enhancement, reasoning an enhancement for undesirability of case is required to attract competent counsel to accept certain cases); *Forrest v. Dynamic Sec.,*

*Inc.*, 2002 WL 31256202, at *2 (E.D.La. Oct.4, 2002) (listing undesirability of case as one of permissible factors to consider in adjusting lodestar amount). Thus, factors already discussed such as the financial burden on counsel, the demands of handling a class action of the size and complexity of this case, and the risk of making no recovery at all may cause a case to be considered "undesirable." *Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, at *33 (W.D.Tex. Feb.6, 1996) (citing *In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D.La.1993)). This factor weighs in favor of approving the fee request.

### k.  The Nature and Length of the Professional Relationship

"A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office." *Johnson* at 719. This factor is not applicable to the present case and weighs neither for nor against approval of Class Counsel's attorneys' fees. *See Jasso*, 2022 U.S. Dist. LEXIS 207043, at *20 (finding this factor did not have any effect on the attorney's fee award).

### l.  Awards in Similar Cases

The requested fee of 40% has been the benchmark in FLSA cases in this circuit for several years and recognized as such in many cases.  In *Blackburn,* when presented with a 40% fee petition, the court held:

> [T]he attorney's fees provisions of the settlement are appropriate and align with the remedial purposes of the FLSA. The settlement agreement requires that [defendant] pay 40 percent of the total settlement amount to FLSA [p]laintiffs' counsel for attorneys' fees and costs. This percentage is in line with that courts have approved in reviewing other FLSA settlements. *See, e.g., Sarabia v. Spitzer Indus., Inc.*, No. 4:17-CV-2092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018); *Matthews v. Priority Energy Servs.*, LLC, No. :15-cv-448, 2018 WL 1939327, at *2 (E.D. Tex. Apr. 20, 2018).

In the present case, Class Counsel seeks an award of the 40% customarily approved in similar cases. This factor weighs heavily in favor of approving Class Counsel's fee request under the Settlement.

Additionally, from the viewpoint of a lodestar crosscheck, the average range of multipliers applied to other class actions has been from 1.0 to over 5.  *See In re Enron Corp. Securities, Derivatives, and ERISA Litigation*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (approving a multiplier of 5.2); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1088 n. 52 (S.D. Tex. 2012) (noting multipliers often range over 5).  In the present case, Class Counsel must still invest substantial time in briefing the final approval motion, attending the hearing, and assisting the Settlement Administrator in settlement administration tasks.  Class Counsel's requested benchmark of 40% is less than a five times multiplier of the lodestar amount.

### v.    *Litigation Expenses*

Under the Settlement, Plaintiffs seeks reimbursement for Class Counsel's litigation expenses incurred in addition to their fees. To date, Class Counsel has incurred $15,455 in litigation expenses. The majority of this total is comprised of the mediation fee ($13,000). The remaining expenses relate to photocopying, filing fees, and service fees.

### F.  Class Representative Service Awards

"Courts 'commonly permit payments to class representatives above those received in settlement by class members generally.'" *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (*quoting Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 870 (E.D. La. 2007). "In deciding whether an incentive award is warranted, courts look to: (1) 'the actions the plaintiff has taken to protect the interests of the class';

(2) 'the degree to which the class has benefitted from those actions'; and (3) 'the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (*quoting Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The Settlement provides for a Class Representative Service Award to the Named Plaintiff in the amount of $10,000. Without the work of Named Plaintiff Grant, the Settlement would not have been possible.  Plaintiff attended multiple meetings with Class Counsel and supplied countless documents and information. He also served as a liaison between other putative class members and Class Counsel. The service payment compensates Named Plaintiff for his efforts on behalf of putative class members, including his participation in the all-day mediation that resulted in this Settlement, and is reasonable, equitable, and well within range of service awards approved for class representatives in other class and collective actions in this Circuit. *See, e.g.*, *Oliver v. Aegis Commc'ns Grp., Inc.*, No. 3:08-CV-828-K, 2010 WL 11618301, at *6 (N.D. Tex. Sept. 21, 2010) (approving service awards in FLSA case to multiple plaintiffs ranging from $2,000 to $7,500); *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-912-FB, 2016 WL 4411551, at *1 (W.D. Tex. June 17, 2016) (approving $10,000 service award to named plaintiff).  Based on the foregoing, the requested Class Representative Service Award is reasonable and fair in light of the invaluable assistance Named Plaintiff provided to Class Counsel on behalf of putative class members in achieving the Settlement.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court preliminarily approve the settlement, certify the settlement class, appoint Plaintiff's counsel as Class Counsel, approve the Settlement Notice, and enter the Proposed Order filed with this Motion.

Respectfully submitted,

SOSA-MORRIS NEUMAN, PLLC

By: /s/ John Neuman
John Neuman
JNeuman@smnlawfirm.com
State Bar No. 24083560
5612 Chaucer Drive
Houston, Texas 77005
Telephone: (281) 885-8630
Facsimile: (281) 885-8813

LEAD ATTORNEY FOR PLAINTIFF

OF COUNSEL:
Beatriz-Sosa Morris
SOSA-MORRIS NEUMAN, PLLC
BSosaMorris@smnlawfirm.com
Texas State Bar No. 24076154
5612 Chaucer Drive
Houston, Texas 77005
Telephone: (281) 885-8844
Facsimile: (281) 885-8813

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with Counsel for Defendants regarding the relief sought in this Motion. Defendant is unopposed.

/s/ John Neuman
John Neuman

## CERTIFICATE OF SERVICE

I certify that I filed this Motion on March 16, 2023 through the Southern District of Texas ECF system which will provide a copy to all Counsel of record. The exhibits to this Motion will be filed under seal and will be provided to Counsel for Defendant by electronic mail.

/s/ John Neuman
John Neuman