# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHAEL GRANT on Behalf of Himself and on Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § § | **CIVIL ACTION NO. 4:23-cv-290** |
| **VES GROUP, INC. and MAXIMUS, INC.,** | § § § | |
| **Defendants.** | § § | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PARTIES' RULE 23 CLASS ACTION AND FLSA COLLECTIVE ACTION SETTLEMENT

Plaintiff Michael Grant ("Grant," the "Named Plaintiff," or "Plaintiff") and Defendants VES Group, Inc. ("VES") and Maximus Inc. ("Maximus") (together, "Defendants") have entered into a Settlement Agreement and Release ("Settlement")[1] to resolve this collective and class action lawsuit brought under the Fair Labor Standards Act ("FLSA")[2] and state law on behalf of the Named Plaintiff and current and former non-exempt, bonus-eligible employees who worked for VES and/or Maximus anywhere in the United States at any time during the relevant period (*i.e.*, May 5, 2019 through December 31, 2021). The Parties agree that the terms of the Settlement represent a fair, adequate, and reasonable compromise of the claims at issue in light of the existence

---

[1] Unless otherwise defined in the motion, defined terms as used herein are intended to have the same meaning as in the Settlement Agreement.

[2] While all Class Members who were mailed notice and have not opted out of the class settlement will be deemed to have released their state law claims, only those Class Members who have affirmatively opt in by endorsing the settlement checks mailed to them after Final Approval will be deemed to have waived their FLSA claims. Those Class Members who have not opted into the case by endorsing their settlement checks will not be deemed to have waived their FLSA claims.

of disputed issues of fact, disputed issues of law with respect to liability, uncertainty as to whether Named Plaintiff would be deemed similarly situated to the putative class and collective members, uncertainty as to whether Named Plaintiff would obtain a judgment in favor of himself and the potential class/collective, and the risk of possible appeals.

On March 27, 2023, the Court preliminarily: 1) approved the Parties' settlement; 2) certified the class under Fed. R. Civ. P. 23 for settlement purposes; 3) appointed Sosa-Morris Neuman, PLLC as class counsel; 4) approved the issuance of notice of the settlement to class members; and 5) appointed Michael Grant as class representative for this settlement.  The Settlement Class Members have now been notified of the terms of the settlement and their right to opt out of or object to it.  The time period for submitting an opt-out or objection to the Settlement closes on June 27, 2023.   To date, no Class members have filed an objection and only 10 have excluded themselves by opting out.[3]

Here, the Settlement satisfies all of the criteria for final approval.  Accordingly, Plaintiff respectfully requests an order: 1) finally approving the Settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out of the settlement; 2) certifying, for settlement purposes only, the Class pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (e) and the collective action pursuant to the FLSA; (3) appointing Michael Grant as class representative for this Settlement; (4) appointing as Class Counsel Beatriz Sosa-Morris and John Neuman, and the firm of Sosa-Morris Neuman, PLLC; (5) approving a service award of $10,000 to Named Plaintiff Michael Grant; (6) approving a fee award in the amount of up to 40% of the Gross Settlement Amount; (7) approving the payment of the Settlement Administrator's fees out of the Gross

---

[3] The Parties' Settlement Agreement provides Defendants the option to cancel the settlement if more than 7.5% of the Settlement Class Members opt-out to exclude themselves from the settlement.  *See* Settlement Agreement (Doc. 8, previously filed under seal), pg. 8, section 2.7(E).  This provision has not been triggered.

Settlement Amount; (8) ordering the Settlement Administrator to pay the Service Award and attorneys' fees, expenses and costs out of the Gross Settlement Amount and to distribute the Settlement Checks to Settlement Class Members; (9) dismissing with prejudice all State Law Claims by Plaintiff and all Class Members who did not opt-out and dismissing with prejudice FLSA Claims for FLSA Collective Members who timely endorse and negotiate/cash their settlement check(s); (10) entering Final Judgment dismissing the Action with prejudice and entering the proposed Order of Final Approval of Settlement; and (11) retaining continuing jurisdiction over the implementation of the Settlement agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of the Settlement Agreement and the Parties' settlement.

## I.    INTRODUCTION

### A.  Relevant Procedural and Factual History

As the facts and procedural history were briefed in Plaintiff's Unopposed Motion for Preliminary Approval (Doc. 6, at 2-6), Plaintiff will provide a shortened summary herein. On May 6, 2022, Named Plaintiff filed a collective action lawsuit against Defendants captioned *Grant v. VES Group, Inc., et al.*, Case No. 4:22-cv-1465 (S.D. Tex.), in which Plaintiff sought to represent a collective action of non-exempt employees who were paid hourly by Defendants and were eligible to receive bonus payments.  The gravamen of Plaintiff's claims was the manner in which Defendants calculated overtime. Specifically, Plaintiff alleges that, in addition to hourly wages, Defendants also paid their quality analysts and other non-exempt employees a series of bonus payments that, until the beginning of 2022, Defendants failed to include in the regular rate when calculating overtime.  Plaintiff alleged that these bonus payments were non-discretionary in nature, such that they should have been included in the overtime calculation.  Defendants denied all

allegations and maintains that they properly paid all non-exempt employees. During the time the first lawsuit was pending, eighty-nine individuals ("Opt-in Plaintiffs") opted-in to the case by filing their notices of consent to join pursuant to 29 U.S.C. § 216(b).

As part of the settlement negotiations, the Parties agreed to toll the statute of limitations beginning on July 17, 2022 and dismiss the first case without prejudice. The Parties thereafter engaged in intensive fact investigation and informal discovery, providing information related to the claims and defenses as well as data to perform calculations of potential damages. On November 18, 2022, the Parties mediated the case and successfully reached a memorandum of understanding. Subsequently, the Parties negotiated and drafted the comprehensive formal settlement agreement, a copy of which has been previously filed in this action under seal (Doc. 8), fully and finally resolving the Fair Labor Standards Act ("FLSA") claims and related state law claims on a class-wide basis. Plaintiff has filed a Complaint with this Court to commence this action ("Action") for the sole purpose of obtaining this Court's approval of the Settlement and to effectuate the Settlement for a full and final resolution of all disputed claims, including the release and dismissal of all such claims with prejudice, as requested in this motion.

Based upon the investigation of proposed Class Counsel, the informal discovery that occurred, and the size of the potential class, and taking into account the contested factual and legal issues involved, the expense and time necessary to prosecute the Action through formal discovery, class-certification proceedings, and trial as well as the risks and costs of further prosecution of the Action, the uncertainties of complex litigation, and the benefits to be received pursuant to this Agreement, Plaintiff and Class Counsel have concluded that a settlement with Defendants on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of Plaintiff

and the putative class. As such, Plaintiff and Class Counsel have agreed to settle this Action with Defendants on the terms set forth in the Parties' Settlement Agreement.

The Parties have agreed to resolve this matter on a Rule 23 class-wide basis. Given the overlap between claims arising under the FLSA and the other state law claims, and the fact that the Rule 23 standard is arguably more demanding than the standard for certification of an opt-in collective under the FLSA, the FLSA and other state law claims are both being resolved together through this Settlement. As such, the Settlement Class is defined as follows:

> **All current and former non-exempt bonus eligible employees who worked for VES Group, Inc. and/or Maximus, Inc. anywhere in the United States at any time from May 5, 2019 through December 31, 2021.**

The Parties believe that the settlement reached in this matter represents a fair and reasonable compromise given the disputed matters at issue and the risks of continuing forward with litigation on the merits and on collective and class certification.

On March 27, 2023 (Doc. 10) the Court granted preliminary approval of the settlement and notice was mailed and emailed to 2,655 Settlement Class Members.  Of those mailed notices, 110 notices were returned, and the settlement administrator attempted to find updated addresses and remail those notices.  By the end of the notice period, only 26 notices were undeliverable and only 10 individuals excluded themselves from the settlement.  To date, there have been no objections made to the Settlement.

**B.  Terms of the Proposed Settlement**

**i.    The Settlement Fund**

Pursuant to the Settlement Agreement, and for settlement purposes only, the Parties stipulate to a Rule 23(b)(3) Settlement Class consisting of those persons who meet the following class definition: **All current and former non-exempt bonus eligible employees who worked**

**for VES Group, Inc. and/or Maximus, Inc. anywhere in the United States at any time from May 5, 2019 through December 31, 2021**. The proposed Settlement provides for the establishment of a common settlement fund in the Gross Settlement Amount, for the benefit of Named Plaintiff and all Settlement Class Members who did not opt out of the Settlement in exchange for a release and waiver of specified wage and hour and related claims.  The settlement fund will be distributed as follows:

- To Settlement Class Members who did not opt-out of the Settlement, a settlement payment pursuant to the allocation formula set forth in the Settlement Agreement;

- To Named Plaintiff, a service award in the amount of $10,000, as consideration for a general release in addition to the standard wage and hour releases provided by Settlement Class Members;

- Administrator's fee not to exceed $31,000 to be paid out of the Gross Settlement Amount;[4] and

- To Class Counsel, 40% of the Gross Settlement Amount for attorneys' fees, including those in connection with securing this Settlement and implementing the Settlement, plus reimbursement of Class Counsel's reasonable costs and litigation expenses.

### ii.      Release

In exchange for the settlement payments under the Settlement Agreement, Plaintiff has agreed to dismiss the Action and all claims with prejudice. Further, in exchange for their respective settlement payments, Plaintiff and each and every Settlement Class Member who did not opt-out of the Settlement will knowingly and voluntarily waive and release Defendants and the Released Parties (as defined in the Settlement Agreement) from all known and unknown claims for unpaid

---

[4] After receiving bids from several companies, the Parties choose CPT, which had the lowest bid at a cost of $24,000.

6

wages, overtime, failure to properly calculate the regular rate or overtime rate, liquidated damages, penalties, and attorneys' fees and costs, any claims under the theory of *quantum meruit*, claims under any other state and/or local law, rule, or regulation related to the payment of wages, overtime, or any other benefits, and any derivative claims, for the full statute of limitations period relative to the state(s) in which the Settlement Class Member worked up through December 31, 2021. In addition, Settlement Class Members who endorse and negotiate/cash their settlement check(s) will release, in addition to the state and local law claims described above, all claims under the FLSA and related federal regulations.

    **iii.    Allocation Formula**

The class consists of 2,656 individuals. The allocation formula used is based on the period of time the Settlement Class Members worked, their pay rates, and the amount of bonuses they received. Specifically, during the statute of limitations, each individual's damages were calculated based on bonuses received and hours worked. By way of example only, if an individual worked 50 hours in a workweek and received a bonus of $200.00 in that week, Class Counsel divided the bonus by total weekly hours and divided it by two to calculate the overtime premium owed. Class Counsel then multiplied that overtime premium by the number of overtime hours. In this example, the damages are $20.00. *See* 29 C.F.R. § 778.209. Class Counsel then calculated total alleged damages over the entire statute of limitations period by extrapolating that Settlement Class Member's data throughout all of that employee's work history within the statute of limitations. In order to assign each Settlement Class Member a percentage, Class Counsel used the Settlement Class Member's individual alleged damages number as the numerator and the total amount of alleged damages for the entire Class as a denominator. Each Settlement Class Member will receive their assigned percentage from the allocation of the Net Settlement Fund. By way of example, if

there are four (4) class members and each class member has alleged damages of $25.00, then they are each assigned a percentage of 25% ($25 numerator and $100 denominator).  Each Settlement Class Member is set to receive a minimum of $100 from the Net Settlement Amount.[5]

## II.   <u>SETTLEMENT CLAIMS ADMINISTRATION</u>

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements:

1.  Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.  Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.  A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions ("Newberg")* §§ 11.22 *et seq.* (4th ed. 2002); *Blackmon v. Zachary Holdings, Inc.*, No. SA-20-CV-00988-JKP, 2022 U.S. Dist. LEXIS 139417, at *8 (W.D. Tex. Aug. 5, 2022).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

The Court granted Plaintiff's Unopposed Motion for Preliminary Approval of Settlement on March 27, 2023.  The Claims Administer mailed and emailed notice to 2,655 Settlement Class Members and only 26 were undeliverable and only 10 individuals opted out.  No objections have been made to the Parties' Settlement Agreement. The deadline to object or opt out is Wednesday, June 27, 2023. The fairness hearing is scheduled for June 28, 2023, at 2:00 P.M.

---

[5] Doc. 8 (Settlement Agreement), pg. 10, Section 3.1(A).

With this motion, Plaintiff requests that the Court grant final approval of their Settlement Agreement.  The Parties respectfully submit for the Court's approval the following schedule for final resolution of this matter:

1. After the fairness hearing, if the Court grants Plaintiff's Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 30 days after the Court enters its Final Order and Judgment. *See* Section 1.8 of the Settlement Agreement.

2. If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired.  *See* Section 1.8 of the Settlement Agreement.

3. Defendants shall fund the settlement account established by the settlement administrator with the Gross Settlement Amount within fifteen (15) business days after the Effective Date. *See* Section 3.3 of the Settlement Agreement.

4. Within five (5) days of funding the Settlement Account, the Administrator shall distribute the money in the Settlement Account in the order of priority set forth in the Settlement Agreement.  *See* Section 3.4 of the Settlement Agreement.

5. Class Members shall have 180 days to endorse and negotiate their Settlement Checks and any uncashed checks shall be paid as *cy pres* to a non-profit within 45 days after the close of the check cashing period.  *See* Section 3.5 of the Settlement Agreement.

### III.    ARGUMENTS AND AUTHORITIES

#### A. The Settlement Procedure for Class Actions

The Fifth Circuit holds that there is an "overriding public interest in favor of settlement" that has been recognized "[p]articularly in class action suits." *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004) (acknowledging the "strong judicial policy favoring the resolution of disputes through settlement" and affirming both class certification and settlement approval (internal citation and quotation marks omitted)).

Approval of a Rule 23 class settlement involves a two-step process. First, counsel submits the proposed terms of the settlement, and the district court makes a preliminary fairness evaluation. *Smith v. Gurstel Chargo, PA*, No. 8:14-CV-183, 2014 WL 6453772, at \*3 (D. Neb. Nov. 17, 2014) ("In considering preliminary approval of a proposed settlement in a class action case, the court makes a preliminary evaluation of the fairness of the settlement, prior to notice."); *see* Manual For Complex Litigation (Fourth) § 21.632 (2004). "To determine whether approval on a preliminary basis is appropriate, a district court considers whether it will 'likely be able to: (1) approve the proposal under Rule 23(e)(2); and (2) certify the class for purposes of judgment on the proposal.'" *Fath v. Am. Honda Motor Co.*, No. 18-CV-1549, 2019 WL 6799796, at \*2 (D. Minn. Dec. 13, 2019) (quoting Rule 23(e)(1)). If these two elements for preliminary approval are satisfied, the Court will review the parties' proposed notice to ensure it satisfies the requirements set out in Rule 23(c)(2)(B) and direct that Rule 23(e) notice be given to the class members advising them of the proposed settlement and the formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the proposed settlement. *See id.* (*quoting Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144, 2019 WL 617791, at \*5 (S.D. Iowa Feb. 14, 2019)); Manual for Complex Litigation (Fourth) § 21.633. Here, the final fairness hearing is set for June 28, 2023 at 2:00 P.M.

The final step in the settlement-approval process takes place after notice has issued and individuals have had the opportunity to exclude themselves from or object to the settlement, when the Court holds a fairness hearing and determines whether to grant final approval of the parties' proposed class-wide settlement. *See* Manual for Complex Litigation (Fourth) §§ 21.633 – 21.635.

Lastly, courts have held that settlement of FLSA claims generally require court approval. "Before approving an FLSA settlement, the Court must ensure that the parties are not negotiating

around the FLSA's requirements, and that the settlement represents a fair and reasonable resolution of a bona fide dispute." *Thompson v. Spa City Steaks, Inc.*, 2019 WL 5653215 (W.D. Ark. Oct. 31, 2019) (discussing judicial approval of FLSA settlements and factors courts consider) (citing *Younger v. Ctrs. For Youth & Families, Inc.*, 2017 WL 1652561, at *1 (E.D. Ark. Apr. 27, 2017)); *accord Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Accordingly, district courts may approve settlements resulting from contested litigation, and the Court should approve the settlement "after scrutinizing the settlement for fairness." *Id.*, 679 F.2d at 1353 (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

## B. The Settlement Class Meets the Legal Standard for Class Certification.

For the same reasons as briefed in the Plaintiff's Motion for Preliminary Approval (*see* Doc. 6 at 9-16), this case meets the legal standard for class certification. A settlement class may be certified if all the requirements of Rule 23(a) are met and one of the requirements of Rule 23(b) is met. Fed. R. Civ. P. 23(a) & (b); Manual for Complex Litigation (Fourth) §21.132. Here, these requirements are met. Thus, the Court should certify the Settlement Class.

### i.    The Rule 23(a) requirements are satisfied.

To obtain certification of a class under Rule 23, the moving party must first prove that the proposed Settlement Class meets the requirements of Rule 23(a): numerosity, commonality, typicality, and adequate representation.

#### 1.  Numerosity

Numerosity requires that the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts have accepted that classes of 100 or more members are sufficient to satisfy the numerosity requirement. *See Mullen v. Treasure Chest*

*Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999); *TWL Corp. v. Chow* (5th Cir. 2013). Here, there are over 2,600 members of the proposed Settlement Class, all of whom worked for Defendants in bonus eligible roles as non-exempt employees in the applicable time period. Given the size of this class, joinder is impracticable and there is sufficient numerosity.

### 2. Commonality

Commonality requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this requirement, the claims of the Class "must depend on a common contention …. That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The class proceeding will allow the court to resolve a discrete question of law whose determination "will resolve an issue that is central to the validity of each of the [individual plaintiff's] claims in one stroke." *Id.* Further, the "claims, defenses, relevant facts, and applicable substantive law" raised by the class claims, ensure that "dissimilarities within the proposed class" do not have the potential to impede the generation of common answers. *M.D. ex rel. Stukenberg v. Perry*, 82 Fed.R.Serv.3d 219, 675 F.3d 832 (5th Cir. 2012).

Here, there are common questions of law and fact which, if resolved, would be dispositive of issues for each of the Settlement Class Members in one stroke. The key questions include whether Defendants' alleged non-inclusion of bonus payments into the regular rate complied with the FLSA and related state wage laws, and, if not, whether the Settlement Class Members were denied pay for any compensable overtime due to the policy. These questions are common to all the Settlement Class Members.

### 3. Typicality

Typicality requires that "the claims and defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts liberally apply the typicality requirement when the representative claims come from the same event or based on the same legal theory as the class members' claims. *See Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002) ("[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

Here, the claims of the Named Plaintiff are typical of the claims of the Settlement Class Members. The claims arise from the same alleged conduct by Defendants and are all based on the same legal theory, *i.e.*, the alleged violation of the FLSA and related state wage laws, through the alleged common policy of paying bonuses but not including those bonus payments in the regular rate for all Settlement Class Members.

### 4.  Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). The Court must consider "[1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of

absentees[.]" *Id.*, citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982).

Here, while exact identity of interests is not required, Named Plaintiff's interests are aligned with those of the Settlement Class Members because the alleged bonus policy at issue in this case affected Plaintiff and the Settlement Class Members in the same way. Further, Named Plaintiff is an appropriate representative for the Settlement Class, and he is able to and will fairly and adequately protect the interests of the Settlement Class. Last, the attorneys for Plaintiff, who are proposed as appointed Class Counsel, are experienced and capable in FLSA and related state wage and hour law class and collective action litigation and have successfully prosecuted numerous actions of a similar nature. (*See* Exhibit B, Declaration of Counsel).

### ii.    The Rule 23(b)(3) requirements are satisfied.

In addition to satisfying the requirements of Rule 23(a), the class must meet one of the subsections of Rule 23(b). Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3), which requires: (1) questions of law or fact common to the class members "predominate" over questions affecting individual class members; and (2) a showing the class action is a superior method of adjudication for the "fair and efficient adjudication of the controversy." *Stirman*, 280 F.3d at 559. The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation, and the District Court must conduct a rigorous analysis of the requirement.

Here, common issues predominate over individualized issues for the proposed Settlement Class.  Named Plaintiff alleges that Defendants implemented a payment practice and applied that practice to him and the proposed Settlement Class to allegedly deny them wages for all time worked. The state laws that Plaintiff is suing on do not vary insofar as their protection for payments

for all hours worked would defeat predominance. Each of the state laws that Plaintiff has sued upon have the minimal common and predominate element of requiring an agreement to work for a specified wage or alleged that the Defendants would be unjustly enriched by not properly paying overtime on the bonus payments.

While arguably there are individualized issues relating to the calculation of damages, the "more prevalent or important" issues regarding potential liability (whether Defendants' common payment practice resulted in Plaintiff and the Settlement Class Members not being paid the proper amount by way of excluding bonuses from the regular rate of pay for purposes of calculating overtime) are both common to the class and plainly do predominate, thus satisfying the Rule 23(b)(3) standard.

In addition to finding that common issues predominate, the Court must also determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As noted above, the fourth of the non-exhaustive factors in Rule 23(b)(3)—manageability—need not be considered when the Court is presented with a settlement class. Here, class treatment under Rule 23(b)(3) is the superior method of adjudicating the Settlement Class Members' claims because, on average, they are worth too little to be pursued individually given the cost and time involved in individual actions. If a settlement class were not certified, it is unlikely that any of the Settlement Class Members would be afforded relief. *See Amchem Prods v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

For the same reasons, each Settlement Class Member's interest in separately prosecuting his or her own individual case supports a finding of superiority. It would be uneconomical and

inefficient for each Settlement Class Member to pursue his or her claims individually in more than 2,600 individual lawsuits, each resulting in a relatively small recovery. If, however, any Settlement Class Member did not wish to participate in the Settlement, he or she had the opportunity may opt out of the proposed class and pursue his or her claims individually or not at all. *See* Fed. R. Civ. P. 23(c)(2)(B)(v) (for Rule 23(b)(3) classes, "notice must clearly and concisely state in plain, easily understood language … that the court will exclude from the class any member who requests exclusion"). Indeed, 10 individuals exercised their option to opt out and exclude themselves from the settlement.   For these reasons, the requirements of Rule 23(b)(3) are also met, and the Settlement Class should be certified.

### C.  **The Proposed Settlement is fair, reasonable, and adequate and should be approved.**

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e).  While Rule 23(e) does not provide any standards or guidelines for settlement approval, it is well-established in this Circuit that in order to approve a settlement, the district court must find that it "is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.1977).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). "[A] court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1331.

16

To determine whether proposed class-action settlements are fair, adequate, and reasonable, Rule 23(e) provides a list of factors that district courts must consider:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6]  Rule 23(e) "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) Adv. Comm. Notes.

Here, the proposed settlement meets the above standards for Court approval.  The Parties' dispute involves legitimate disputed issues of fact concerning the terms and application of Defendants' alleged practice of not including bonus payments in the regular rate; the Parties exchanged detailed information and data regarding the facts, time entries, and potential damages; and the Parties, through their counsel, engaged in arms' length, good faith negotiations as to the terms of the Settlement. More specifically:

> (A) Plaintiff and proposed Class Counsel adequately represented the class in pursuing the claims on their behalf, investigating the facts underlying the

---

[6] Before Rule 23(e) was amended, different Circuit Courts had different lists of factors. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc*. (5th Cir. 2012) (The *Reed* factors are "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp*., 703 F.2d 170, 172 (5th Cir. 1983).).

claims, analyzing the merits and potential damages, and negotiating a fair resolution.

(B) Proposed Class Counsel and counsel for Defendants negotiated the Settlement and the terms and conditions of the Settlement Agreement at arm's length, through extensive verbal and email communications, and in a mediation with an experienced nationwide FLSA class mediator.

(C) The relief negotiated for the Settlement Class is fair, reasonable, and adequate and fully considers the litigation risks and other factors referenced in Rule 23(e)(2)(C). As noted above, the costs of further litigation would dwarf any potential recovery and would present the risk of no recovery at all. If the Parties had been unable to reach an amicable resolution, the Action would have been heavily litigated between the Parties for over a year or more, and any disposition of the case at the District Court level would likely have gone to the Court of Appeals. Therefore, many years might pass before ultimate resolution.

(D) The Settlement Agreement provides for a reasonable process for providing Settlement Class Members with notice of the settlement (and the opportunity to opt-out or object) and to receive their settlement payments by mail.

(E) The Settlement Agreement provides for a reasonable attorney's fee and for payment of costs to compensate proposed Class Counsel for the risk, time and effort expended in representing the interests of Plaintiff and Settlement Class.

(F) On its face, the Settlement Agreement treats all Settlement Class Members equitably relative to each other in that each Settlement Class Member will receive a *pro rata* individual settlement amount based on the number of weeks they worked in which they received a bonus and worked overtime.

(G) The reaction to the Settlement has been favorable and in accord with similar cases. Only 10 individuals have excluded themselves from the Settlement Agreement and none have objected. This is a rate of less than 1%.[7]

---

[7] *See Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. 2008) ("A low percentage of objections will confirm the reasonableness of a settlement and support its approval.") ( citing *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990), wherein fact that only 10% of class members objected to settlement weighed in favor of approval); *Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *15 (C.D. Cal. 2010) (where approximately 5% of class members submitted claims and under 1 % opted out or objected, "[t]he comparatively low number of opt-outs and objectors indicates that generally, class members favor the proposed settlement and find it fair"); *Briggs v. Hariford Fin. Servs. Grp., Inc.*, 2009 WL 2370061, at *11 (E.D. Pa. July 31, 2009) ("Put otherwise, less than 2. 7% of the class opted out. It is therefore fair to infer that a vast majority-over 97%-of the class supports the Agreement.").

On these facts, the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the class.

**D.  Named Plaintiff's Service Award Should be Awarded.**

"Courts 'commonly permit payments to class representatives above those received in settlement by class members generally.'" *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (*quoting Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 870 (E.D. La. 2007). "In deciding whether an incentive award is warranted, courts look to: (1) 'the actions the plaintiff has taken to protect the interests of the class'; (2) 'the degree to which the class has benefitted from those actions'; and (3) 'the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Id*. (*quoting Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The Settlement provides for a Class Representative Service Award to the Named Plaintiff in the amount of $10,000. Without the work of Named Plaintiff Grant, the Settlement would not have been possible.  Plaintiff attended multiple meetings with Class Counsel and supplied countless documents and information. He also served as a liaison between other putative class members and Class Counsel. The service payment compensates Named Plaintiff for his efforts on behalf of putative class members, including his participation in the all-day mediation that resulted in this Settlement, and is reasonable, equitable, and well within range of service awards approved for class representatives in other class and collective actions in this Circuit. *See, e.g.*, *Oliver v. Aegis Commc'ns Grp., Inc.*, No. 3:08-CV-828-K, 2010 WL 11618301, at *6 (N.D. Tex. Sept. 21, 2010) (approving service awards in FLSA case to multiple plaintiffs ranging from $2,000 to $7,500); *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-912-FB, 2016 WL 4411551, at *1 (W.D. Tex. June 17, 2016) (approving $10,000 service award to named plaintiff).  Based on

19

the foregoing, the requested Class Representative Service Award is reasonable and fair in light of the invaluable assistance Named Plaintiff provided to Class Counsel on behalf of putative class members in achieving the Settlement.

### E.  Approval of the FLSA Settlement is Appropriate Under Federal Law.

Plaintiff also requests that the Court approve the settlement of the FLSA claims of those Class Members who endorse their settlement payments. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001).  Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Sewell*, 2012 WL 1320124, at *10. Accordingly, the higher standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores,* 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz v. E. Locating, Serv.,* No. 1:10-cv-04082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food, LLC*, No. 9-cv-00400, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010). In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Doc. 8-2 (Declaration

of John Neuman). During the litigation and at the mediation, Plaintiff and Defendants were represented by counsel experienced in wage and hour law. Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's length settlement negotiations, it should be approved.

**F.  The Court Should Approve the Attorneys' Fees and Costs**

**i.      Attorneys' Fees in Common Fund Cases**

Attorneys' fees are commonly awarded in both federal and state courts in recognition of the principle that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (observing that the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund […] is entitled to a reasonable attorney's fee from the fund as a whole"). The common fund doctrine ensures payment for work performed by class counsel, avoiding the alternative of unjust enrichment of absent class members who benefit from the fund without an express retainer agreement. *Id.*

The Fifth Circuit has approved either a lodestar or a percentage of fund method when calculating attorney's fees in settled FLSA cases. *See Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) ("The Fifth Circuit has never reversed a district court judge's decision to use the percentage method, and none of our cases preclude its use."). "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden I Condominium Ass'n. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (citations and alterations omitted).

### iv.    Method of Determining Attorney's Fees

Common fund cases should be based on the percentage fee method. *In re Harrah's Entm't*, No. 95-3925, 1998 U.S. Dist. LEXIS 18774, at \*7 (E.D. La. Nov. 24, 1998). The benefits of the percentage fee method are: (1) readily ascertainable fee amounts and (2) increased settlements. *Id.*[8] Plaintiff requests that the Court employ the common fund/percentage method, apply the established benchmark of 40 percentage, and affirm the benchmark with the application of the *Johnson* factors.

In the Fifth Circuit, district courts regularly use the percentage method of calculating a common fund class action settlement with attorneys' fees, with a *Johnson* reasonableness check." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012.); *See, e.g.*, *Klein v. O'Neal, Inc.*, Nos. 7:03–CV–102–D, 7:09–CV–94–D, 2010 WL 1435161, at \*34 (N.D.Tex. Apr. 9, 2010) (collecting cases); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 751 (S.D.Tex.2008); *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 860 (E.D.La. 2007) 472 F.Supp.2d at 860 (collecting cases); *Batchelder v. Kerr–McGee Corp.*, 246 F.Supp.2d 525, 531 (N.D.Miss. 2003). The *Johnson* reasonableness check is a framework to evaluate the percentage method of settlement of fees from a common fund. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717, 720 (5th Cir.1974), *overruled on other grounds, Blanchard v. Bergeron,* 489 U.S. 87, (1989). The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary

---

[8] "By contrast, there are at least nine perceived deficiencies with the lodestar method, including: (1) increasing the workload of the judicial system; (2) lack of objectivity;  (3) a sense of mathematical precision unwarranted in terms of the realities of the practice of law; (4) ease of manipulation by judges who prefer to calculate the fees in terms of percentages of the settlement fund; (5) encouraging duplicative and unjustified work; (6) discouraging early settlement; (7) not providing judges with enough flexibility to award or deter lawyers so that desirable objectives, such as early settlement, will be fostered; (8) providing relatively less monetary reward to the public interest bar; and (9) confusion and unpredictability in administration."  *Id.* at 7-8.

fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

###### v. Plaintiff's Fee Request Is Within the Circuit's Benchmark

Plaintiff seeks attorney's fees at the rate of 40% of the gross settlement amount. This rate is typically approved in settled FLSA collective action cases in this Circuit and has been established as the benchmark. *Sarabia v. Spitzer Indus., Inc.*, No. 4:17-CV-02092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (Ellison, J.) ("The parties agreed on attorneys' fees that represent 40% of Defendant's total payment. This percentage is in line with that approved in other FLSA cases."); *Jasso v. HC Carriers, LLC*, No. 5:20-CV-212, 2022 U.S. Dist. LEXIS 207043, at *16-17 (S.D. Tex. Oct. 19, 2022) (In FLSA cases, an "**attorney's fee of 40% [is] a reasonable benchmark,** subject to possible upward or downward adjustment after application of the *Johnson* factors.") (emphasis added); *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-01056-RP, 2021 WL 2934896, at *3 (W.D. Tex. Jan. 25, 2021) (Pitman, J.) ("The settlement agreement requires that [the defendant] pay 40 percent of the total settlement amount to FLSA Plaintiffs' counsel to cover attorney's fees and costs, in addition to 'advanced litigation expenses.' […] This percentage is in line with [w]hat courts have approved in reviewing other FLSA settlements."); *Singer v. Wells Fargo Bank, N.A.*, No. 5:19-cv-00679-JKPESC, 2020 WL 10056302, at *2 (W.D. Tex. July 14, 2020) (Pulliam, J.) ("The Parties' agreement that Plaintiffs' counsel is entitled to a total of forty percent of the gross settlement amount for fees and costs is also reasonable."); *Arnold v. West Mississippi Home Health Servs., Inc.*, No. 3:17-cv-00673-WHBLRA, 2018 WL 11275432,

at *3-4 (S.D. Miss. May 29, 2018) (Barbour, J.) (approving settlement providing attorney's fees in the amount of forty-five percent of the gross settlement amount); *Lackey v. SDT Waste and Debris Services, LLC*, No. 16-0239, 2014 WL 4809535, at *3 (E.D. La. Sept. 26, 2014) (Whitehurst, M.J.) (approving forty percent contingency fee in FLSA settlement); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (affirming district court's finding that contingency fees for class funds have ranged from thirty-five to forty percent, and that thirty percent contingent fee "is on the low side" for labor litigation); *Sterling v. Greater Houston Transportation Company, et al.*, No. 4:20-cv-00910 (S.D. Tex. Apr. 19, 2022) (Rosenthal, J.) (approving 40% fee award to plaintiff's counsel in FLSA collective action).

Accordingly, Plaintiff requests that the Court approve the requested percentage fee of 40% because it is the benchmark in FLSA cases. The *Johnson* Factors discussed below support this request.

### 5. The Johnson Factors Support the Fee Request

#### a. The Time and Labor Required

Class Counsel has expended significant effort and resources to achieve an extraordinary result for the Settlement Class Members. Specifically, Class Counsel interviewed and/or communicated with the 89 Opt-ins who joined the first action before Plaintiff voluntarily dismissed it with prejudice to pursue settlement and uncovered and reviewed evidence prior to engaging in settlement negotiations. Many hours went into legal research and investigation of the claims made by Plaintiff. Class Counsel also reviewed hundreds of documents to assess the claims made and the defenses asserted. The Parties then engaged in a full day's mediation and negotiated a memorandum of understanding containing material terms of the Settlement. In the weeks

following the mediation, the Parties engaged in multiple rounds of negotiations to reach a formal, comprehensive Settlement Agreement.

Achieving this result for a class of over 2,600 individuals was no small task. Although the "hours claimed or spent on a case should not be the sole basis for determining a fee, they are a necessary ingredient to be considered." *Johnson* at 717. To date, Class Counsel has expended more than 800 hours in attorney and staff time in performing the aforementioned work on behalf of the Class. Class Counsel's billing summary is included in the attached declaration and supports a finding in favor of the fees requested. This is currently a multiplier of approximately four which is within the customary fee for common fund cases.[9] In "contingency fee cases, this multiplier is necessary to reflect the possibility of no recovery." *In re Harrah's Entm't*, 1998 U.S. Dist. LEXIS 18774, at *15.

Moreover, the requested fees are not based solely on the time and effort already expended; they are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). Since the issuance of Notice, Class Counsel expended an additional 50 hours and anticipates expending at least that same amount of hours once Class Members receive their settlement checks. In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. *Id.* Here, this factor weighs in favor of granting the fee requested.

---

[9] *In re Enron Corp. Securities, Derivatives, and ERISA Litigation*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (approving a multiplier of 5.2); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1088 n. 52 (S.D. Tex. 2012) ("In our informal review of opinions evaluating a lodestar cross-check, the multipliers ranged from about 1.0 to over 5.0, with a substantial number of multipliers in the 3.0 to 4.0 range").

### b.  The Novelty and Difficulty of the Questions

Courts have consistently recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law … These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).  While this case may not provide any novel questions of law, it nevertheless involved difficult and complex issues by virtue of being a hybrid class and collective action. "[C]ourts have recognized that a hybrid action which includes both an opt-out state law class and an opt-in FLSA class is complex." *Izzio v. Century Golf Partners Mgmt., L.P.*, No. 3:14-CV-03194-M, 2019 WL 10589568, at *9 (N.D. Tex. Feb. 13, 2019), *aff'd*, 787 F. App'x 242 (5th Cir. 2019). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. *See Ansoumana*, 201 F.R.D. at 89 (S.D.N.Y. 2001).

The present Action presents the same type of complexities as *Izzio*, where the court held "the issues presented in this action are complex and require a level of legal skill. This supports the finding that the requested fees are reasonable." *Izzio*, 2019 WL 10589568, at *9. Here, the central disputed issue was whether the exclusion of certain bonuses from the regular rate of pay for purposes of calculating overtime was proper.  Defendants contended that the bonuses were solely discretionary and therefore properly excluded from the regular rate.  Absent settlement, the Parties would have vigorously litigated the issue of what constitutes a "discretionary", as opposed to "non-discretionary," bonus.  This would have required protracted discovery relating to Defendants' pay practices, bonus plans, and bonus payments, including ESI discovery, as well as depositions to obtain testimony regarding the discretionary or non-discretionary nature of the bonus payments—

including testimony from Named Plaintiff, Opt-in Plaintiffs, and putative class members regarding their expectations, if any, with regard to earning bonuses. A challenge Plaintiff faced in this case was the running statute of limitations because Defendants changed their pay practices. Upon agreement to engage in private mediation, Class Counsel was able to obtain Defendants' consent to toll the statute of limitations pending settlement negotiations.

In short, this would have been a long and fact intensive case in which Class Members risked recovering $0 if Defendants' defenses were found to be meritorious, defeating Plaintiff's claims. "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful substantial settlement. A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1363-64. The second *Johnson* factor weighs in favor of approving the requested attorneys' fees.

### c.   The Skill Required to Perform the Legal Services Properly

Courts often review the second *Johnson* factor jointly with the third. In addition to the complexities presented by the hybrid nature of this lawsuit, the case presented a number of other legal and factual challenges. The parties spent substantial time debating the claims and defenses. Furthermore, highly experienced class action attorneys represented the Plaintiff and Defendants, respectively. "Despite formidable opposition, plaintiffs were able to work together as a team and overcome many obstacles and financial burdens in reaching a settlement. In addition, because of counsel's efforts, expensive and prolonged discovery was avoided in favor of an amicable resolution." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 328 (W.D. Tex. 2007). *See also*, *Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, at *31 (W.D. Tex. Feb. 6, 1996) (recognizing exceptional skills requisite to perform legal services properly in complex class action).

Given the level of complexity in this matter as outlined above, the attorneys on both sides of the case were required to have an exceptional amount of skill and knowledge in wage and hour law in order to properly litigate the case on behalf of their clients. *See Walco Invs. v. Thenen*, 975 F.Supp. 1468,1472 (S.D. Fla. 1997) (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I,* 946 F.2d at 772 n. 3 (in assessing the quality of representation by Class Counsel, Court also should consider the quality of their opposing counsel.); *Johnson,* 488 F.2d at 718; *Ressler v. Jacobson,* 149 F.R.D. 651, 654 (M.D. Fla. 1992). "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested…   In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant premium." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1363.  So it should be here.

In obtaining the proposed Settlement, Class Counsel reviewed payroll and time entry data for hundreds of employees and prepared a comprehensive, complicated, and accurate damages model.  Moreover, Plaintiff interviewed numerous witnesses and performed legal research into Defendants' defenses under state and federal law.  Class Counsel has considerable skill and experience given the 10+ years of litigating and negotiating these types of federal and state law hybrid wage claims.  Accordingly, this factor weighs in favor of approving the requested fee.

### d.  The Preclusion of Other Employment

In this case, Class Counsel belong to a small law firm. The involvement of Class Counsel in this case has diminished, and perhaps in some cases foreclosed, the acceptance of other employment or possible business opportunities. *See DeHoyos*, at 328 (holding "[b]ased on the number of hours expended by counsel, their support staffs, and the experts, no doubt remains that

cases were not accepted because of this ongoing litigation, especially cases which demanded immediate attention.).  This forth *Johnson* factor supports the reasonableness of the fee request.

### e.  The Customary Fee

The fee sought in this case is customary and consistent with other percentage fee awards in this Circuit and this Court.  As mentioned above, 40% is the benchmark and a multiplier of approximately four of the current lodestar is within the range of multipliers in common fund cases especially in light of the results obtained herein.[10]  In FLSA cases, an "**attorney's fee of 40% [is] a reasonable benchmark,** subject to possible upward or downward adjustment after application of the *Johnson* factors."  *Jasso v. HC Carriers, LLC*, No. 5:20-CV-212, 2022 U.S. Dist. LEXIS 207043, at *16-17 (S.D. Tex. Oct. 19, 2022) (emphasis added).  Accordingly, this fifth *Johnson* factor also weighs in favor of the requested attorneys' fees.

### f.  Whether the Fee is Fixed or Contingent

This case was taken on a purely contingency fee basis. In undertaking to prosecute this complex action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment. "The contingency fee system 'permits a greater recovery for successful cases,

---

[10] *See, Sarabia v. Spitzer Indus., Inc.*, No. 4:17-CV-02092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (Ellison, J.) ("The parties agreed on attorneys' fees that represent 40% of Defendant's total payment. This percentage is in line with that approved in other FLSA cases."); *Blackburn v. Conduent Com. Sols. LLC*, 2020 WL 9810023, at *3 (W.D. Tex. Dec. 22, 2020) (awarding 40% of common fund in FLSA case).  Many district courts in the Fifth Circuit have approved attorney's fees amounting to 40% or more of the settlement amount in FLSA cases. *See, e.g.*, *Singer v. Wells Fargo Bank, N.A.*, No. 5:19-CV-00679, 2020 U.S. Dist. LEXIS 256111, 2020 WL 10056302 at *2 (W.D. Tex. July 14, 2020); *Sarabia* 2018 WL 6046327 at *4 (collecting cases); *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-01056-RP, 2021 WL 2934896, at *3 (W.D. Tex. Jan. 25, 2021) (Pitman, J.) ("The settlement agreement requires that [the defendant] pay 40 percent of the total settlement amount to FLSA Plaintiffs' counsel to cover attorney's fees and costs, in addition to 'advanced litigation expenses.' […] This percentage is in line with [w]hat courts have approved in reviewing other FLSA settlements."); *Arnold v. West Mississippi Home Health Servs., Inc.*, No. 3:17-cv-00673-WHBLRA, 2018 WL 11275432, at *3-4 (S.D. Miss. May 29, 2018) (Barbour, J.) (approving settlement providing attorney's fees in the amount of forty-five percent of the gross settlement amount); *Lackey v. SDT Waste and Debris Services, LLC*, No. 16-0239, 2014 WL 4809535, at *3 (E.D. La. Sept. 26, 2014) (Whitehurst, M.J.) (approving forty percent contingency fee in FLSA settlement); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (affirming district court's finding that contingency fees for class funds have ranged from thirty-five to forty percent, and that thirty percent contingent fee "is on the low side" for labor litigation); *Sterling v. Greater Houston Transportation Company, et al.*, No. 4:20-cv-00910 (S.D. Tex. Apr. 19, 2022) (Rosenthal, J.) (approving 40% fee award to plaintiff's counsel in FLSA collective action).

thereby rewarding their investment in successes, and offsetting the losses from unsuccessful cases.'" *DeHoyos*, at 329, *quoting In re Shell Oil Refinery*, 155 F.R.D. 552, 571 (E.D.La. 1993). Adjustment of the lodestar to reflect the contingent nature of the suit was recognized by the United States Court of Appeals for the Fifth Circuit in *Graves v. Barnes*, 700 F.2d 220, 222–23 (5th Cir. 1983). Similarly, the Seventh Circuit also recognizes this principle. *See, Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) (holding "when attorneys' receipt of payment is contingent on the success of the litigation, reasonable compensation may demand more than the hourly rate multiplied by the hours worked, for that is exactly what the attorneys would have earned from clients who agreed to pay for services regardless of success. Thus to account for the contingent nature of the compensation, a court should assess the riskiness of litigation.").

Furthermore, "[a] risk multiplier is not merely available in a common fund case but can be mandated if the court finds that counsel had no sure source of compensation." *In re Combustion, Inc*., 968 F. Supp. 1116,1133 (W.D. La. 1997).  Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F.Supp.2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D.Fla.1988), aff'd, 899 F.2d 21 (11th Cir.1990)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir.1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F.Supp. 755, 759 (N.D.Ga.1985), *modified,* 803 F.2d 1135 (11th Cir.); *York v. Alabama State Bd. Of Education*, 631 F.Supp. 78, 86 (M.D.Ala.1986).

As one court observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer…. A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 548 (S.D. Fla. 1988)

In this case, Class Counsel assumed all of the risk in pursuing this case, and coupled with the requirement that Class Counsel advance thousands of dollars in litigation expenses, there was no guarantee of any recovery. As such, this factor supports the reasonableness of the fee request.

### g.   The Time Limitations Imposed

"Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson*, at *718. This factor is not applicable to the present case and weighs neither for nor against an upward or downward adjustment from the benchmark of 40%.

### h.   The Amount Involved and Results Obtained

The amount in controversy involved and results obtained strongly support approval of Class Counsel's requested fees. Named Plaintiff and Settlement Class Members will receive a sizeable recovery with this Settlement.  In the present case, Class Counsel has obtained a gross settlement that accounts for approximately 141% of the maximum alleged damages Class Counsel believes the Class could obtain if they were successful during a two-year statute of limitations without accounting for liquidated damages.  The Settlement Agreement is an outstanding result for all the Settlement Class Members and was obtained quickly and efficiently.  Not a single class member had to be subject to written discovery, depositions, or cross-examination at trial, yet they

can reap the benefit of recovering approximately 85% of their alleged back wages *in their pocket* (after accounting for attorney's fees and expenses). *See Jasso*, No. 5:20-CV-212, 2022 U.S. Dist. LEXIS 207043, at *19 (finding that class members receiving 85% of their calculated back pay supports the agreed upon award of attorney's fees); *Cabezas v. Bravura Info. Tech. Sys.*, No. 7:19-CV-00027, 2019 U.S. Dist. LEXIS 244179, at *8 (S.D. Tex. Dec. 11, 2019) (finding a 44% recovery was satisfactory). The eighth *Johnson* factor supports Class Counsel's fee request under the Settlement Agreement.

### i.   The Experience, Reputation, and Ability of the Attorneys

The declaration of Class Counsel filed the preliminary approval motion (Doc. 8-2) demonstrates that experienced counsel represented the Class throughout this litigation. Class Counsel has represented employees in FLSA and wage related matters for over 10 years. Class Counsel have previously been approved as Class Counsel in other FLSA collective and wage-related Rule 23 class actions. Moreover, Class Counsel have successfully prosecuted FLSA cases, argued FLSA issues before the Fifth Circuit, and pursued FLSA cases in arbitration and wage claims with the NLRB. The experience, reputation, and ability of Class Counsel supports approval of Class Counsel's fee petition.

### j.   The Undesirability of the Case

Courts have recognized the undesirability of a case is another important factor in determining a fair fee award. *See Alberti v. Klevenhagen*, 903 F.2d 352, 352 (5th Cir.1990) (affirming district court's undesirability enhancement, reasoning an enhancement for undesirability of case is required to attract competent counsel to accept certain cases); *Forrest v. Dynamic Sec., Inc.*, 2002 WL 31256202, at *2 (E.D.La. Oct.4, 2002) (listing undesirability of case as one of permissible factors to consider in adjusting lodestar amount). Thus, factors already discussed such

as the financial burden on counsel, the demands of handling a class action of the size and complexity of this case, and the risk of making no recovery at all may cause a case to be considered "undesirable." *Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, at \*33 (W.D.Tex. Feb.6, 1996) (citing *In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D.La.1993)). This factor weighs in favor of approving the fee request.

### k.  The Nature and Length of the Professional Relationship

"A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office." *Johnson* at 719. This factor is not applicable to the present case and weighs neither for nor against approval of Class Counsel's attorneys' fees. *See Jasso*, 2022 U.S. Dist. LEXIS 207043, at \*20 (finding this factor did not have any effect on the attorney's fee award).

### l.  Awards in Similar Cases

The requested fee of 40% has been the benchmark in FLSA cases in this circuit for several years and recognized as such in many cases.  In *Blackburn*, when presented with a 40% fee petition, the court held:

> [T]he attorney's fees provisions of the settlement are appropriate and align with the remedial purposes of the FLSA. The settlement agreement requires that [defendant] pay 40 percent of the total settlement amount to FLSA [p]laintiffs' counsel for attorneys' fees and costs. This percentage is in line with that courts have approved in reviewing other FLSA settlements. *See, e.g.*, *Sarabia v. Spitzer Indus., Inc.*, No. 4:17-CV-2092, 2018 WL 6046327, at \*4 (S.D. Tex. Nov. 19, 2018); *Matthews v. Priority Energy Servs., LLC*, No. :15-cv-448, 2018 WL 1939327, at \*2 (E.D. Tex. Apr. 20, 2018).

In the present case, Class Counsel seeks an award of the 40% customarily approved in similar cases. This factor weighs heavily in favor of approving Class Counsel's fee request under the Settlement.

Additionally, from the viewpoint of a lodestar crosscheck, the average range of multipliers applied to other class actions has been from 1.0 to over 5.   *See In re Enron Corp. Securities, Derivatives, and ERISA Litigation*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (approving a multiplier of 5.2); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1088 n. 52 (S.D. Tex. 2012) (noting multipliers often range over 5).  In the present case, Class Counsel must still invest substantial time in attending the final approval hearing, communicating with Settlement Class Members regarding the hearing and issuance of settlement payments, and assisting the Settlement Administrator in settlement administration tasks.  Class Counsel's requested benchmark of 40% is approximately four times multiplier of the lodestar amount.

### 6.  Litigation Expenses

Under the Settlement, Plaintiffs seek reimbursement for Class Counsel's litigation expenses incurred in addition to their fees. To date, Class Counsel has incurred $15,455 in litigation expenses. The majority of this total is comprised of the mediation fee ($13,000). The remaining expenses relate to photocopying, filing fees, and service fees.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) finally approve the Settlement as fair, adequate and reasonable; (2) certify for settlement purposes only, the Settlement Class, (3) appoint Michael Grant as the class representative for this Settlement; (4) approve the service award of $10,000 to the Named Plaintiff, Michael Grant; (5) appoint Plaintiff's counsel Beatriz Sosa-Morris and John Neuman as Class Counsel; (6) approving Plaintiff Counsel's requested fee award of 40%; (7) retaining continuing jurisdiction over Plaintiff, the Settlement Class, and Defendants to enforce the Settlement Agreement and the

Court's Order of Final Approval of Settlement; (8) entering Final Judgment dismissing the Action

with prejudice; and (9) entering the proposed Order of Final Approval of Settlement.

Respectfully submitted,

SOSA-MORRIS NEUMAN, PLLC

By: /s/ John Neuman
John Neuman
JNeuman@smnlawfirm.com
State Bar No. 24083560
5612 Chaucer Drive
Houston, Texas 77005
Telephone: (281) 885-8630
Facsimile: (281) 885-8813

LEAD ATTORNEY FOR PLAINTIFF

OF COUNSEL:
Beatriz-Sosa Morris
SOSA-MORRIS NEUMAN, PLLC
BSosaMorris@smnlawfirm.com
Texas State Bar No. 24076154
5612 Chaucer Drive
Houston, Texas 77005
Telephone: (281) 885-8844
Facsimile: (281) 885-8813

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for Defendants regarding the relief sought in this Motion.  Defendants are not opposed.

/s/ John Neuman
John Neuman